## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

PUBLIC INTEREST LEGAL
FOUNDATION,

          Plaintiff,

v.

JOCELYN BENSON, in her official
capacity as Michigan Secretary of State,

          Defendant.

CIVIL ACTION

No. 1:21-cv-00929

## PROPOSED INTERVENOR-DEFENDANTS' MOTION TO INTERVENE

Proposed Intervenor-Defendants the Detroit/Downriver Chapter of the A. Philip Randolph Institute ("APRI"), the Michigan Alliance for Retired Americans ("MiARA") and Rise, Inc. (together, "Proposed Intervenors") seek to participate as intervening defendants in the above-captioned lawsuit to safeguard their substantial and distinct legal interests, as well as the interests of their members and constituents, which will otherwise be inadequately represented in the litigation. For the reasons discussed in the memorandum in support, filed concurrently herewith, Proposed Intervenors are entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, Proposed Intervenors request permissive intervention pursuant to Rule 24(b).

1

WHEREFORE, Proposed Intervenors request that the Court grant them leave to intervene in the above-captioned matter and to file their proposed answer (Ex. 1).

Respectfully submitted, this 25th day of January, 2022.

/s/ *Uzoma N. Nkwonta*
Uzoma N. Nkwonta
Joshua L. Harris*
Noah B. Baron*
Joel J. Ramirez*
**ELIAS LAW GROUP LLP**
10 G Street NE
Suite 600
Washington, DC 20002
Telephone: (202) 968-4654
Facsimile: (202) 968-4498
unkwonta@elias.law
jharris@elias.law
nbaron@elias.law
jramirez@elias.law

Sarah S. Prescott
Salvatore Prescott & Porter, PLLC
105 E. Main Street
Northville, Michigan 48167
sprescott@spplawyers.com
Telephone: (248) 679-8711
Facsimile: (248) 773-7280
sprescott@spplawyers.com

*Counsel for Proposed Intervenors*
*Motions for Pro Hac Vice Forthcoming*

## CERTIFICATE OF SERVICE

Uzoma N. Nkwonta certifies that on the 25th day of January 2022, he served

a copy of the above document in this matter on all counsel of record and parties via

the ECF system.

/s/ *Uzoma N. Nkwonta*
Uzoma Nkwonta

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

PUBLIC INTEREST LEGAL
FOUNDATION,

             Plaintiff,

   v.

JOCELYN BENSON, in her official
capacity as Michigan Secretary of State,

             Defendant.

CIVIL ACTION

No. 1:21-cv-00929

## PROPOSED INTERVENOR-DEFENDANTS' BRIEF IN SUPPORT OF
## <u>MOTION TO INTERVENE</u>

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................1

II.   BACKGROUND ........................................................................................2

III.   STANDARD OF LAW .............................................................................5

IV.   ARGUMENT..............................................................................................6

   A.   Proposed Intervenors are entitled to intervene as of right. ...........................7

   1.   The motion to intervene is timely. .............................................................7

   2.   Proposed Intervenors have significant protectable interests in this litigation, and their interests may be impaired absent intervention....................................9

   3.   Proposed Intervenors' interests are not adequately represented by the current parties....................................................................................13

   B.  Alternatively, Proposed Intervenors should be granted permissive intervention....................................................................................16

V.  CONCLUSION ...........................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Linton ex rel. Arnold v. Comm'r of Health & Env't,*
   973 F.2d 1311 (6th Cir. 1992) ...........................................................9, 13

*Bellitto v. Snipes,*
   935 F.3d 1192 (11th Cir. 2019) .................................................11, 14

*Blount-Hill v. Zelman,*
   636 F.3d 278 (6th Cir. 2011) .......................................................5, 7, 8

*Bradley v. Milliken,*
   828 F.2d 1186 (6th Cir. 1987) ........................................................9, 13

*Burdick v. Takushi,*
   504 U.S. 428 (1992)....................................................................9

*Burrell v. State Farm Mut. Auto. Ins. Co.,*
   No. CV 16-10508, 2016 WL 9414103 (E.D. Mich. June 10, 2016) ...................8

*Conservation Law Found. of New Eng., Inc. v. Mosbacher,*
   966 F.2d 39 (1st Cir. 1992)...........................................................13

*Grubbs v. Norris,*
   870 F.2d 343 (6th Cir. 1989) .........................................................6, 13

*Grutter v. Bollinger,*
   188 F.3d 394 (6th Cir. 1999) .........................................................5

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982)....................................................................12

*Issa v. Newsom,*
   No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351 (E.D. Cal.
   June 10, 2020)........................................................................15

*Jansen v. City of Cincinnati,*
   904 F.2d 336 (6th Cir. 1990) .........................................................7

*Kirsch v. Dean*,
　733 F. App'x 268 (6th Cir. 2018) ........................................................................9

*Kleissler v. U.S. Forest Serv.*,
　157 F.3d 964 (3d Cir. 1998) ..............................................................................13

*League of Women Voters of Mich. v. Johnson*,
　902 F.3d 572 (6th Cir. 2018) ........................................................................6, 16

*Martin v. Corr. Corp. of Am.*,
　231 F.R.D. 532 (W.D. Tenn. 2005) ....................................................................8

*Mausolf v. Babbitt*,
　85 F.3d 1295 (8th Cir. 1996) .............................................................................13

*Mich. State AFL-CIO v. Miller*,
　103 F.3d 1240 (6th Cir. 1997) ...........................................................9, 10, 12, 13

*Paher v. Cegavske*,
　No. 3:20-CV-00243-MMD-WGC, 2020 WL 2042365 (D. Nev.
　Apr. 28, 2020) ....................................................................................................15

*Pride v. Allstate Ins. Co.*,
　No. 10-13988, 2011 WL 692299 (E.D. Mich. Feb. 18, 2011) ............................8

*Priorities USA v. Benson*,
　448 F. Supp. 3d 755 (E.D. Mich. 2020) ........................................................6, 16

*Pub. Int. Legal Found., Inc. v. Winfrey*,
　463 F. Supp. 3d 795 (E.D. Mich. 2020) ....................................................*passim*

*Purnell v. City of Akron*,
　925 F.2d 941 (6th Cir. 1991) .................................................................5, 10, 12

*Stupak-Thrall v. Glickman*,
　226 F.3d 467 (6th Cir. 2000) ..........................................................................5, 7

*Wilkins v. Daniels*,
　No. 2:12-CV-1010, 2012 WL 6015884 (S.D. Ohio Dec. 3, 2012) ...................15

## Other Authorities

Fed. R. Civ. P. 24 ..............................................................................................*passim*

iii

## I.    INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenor-Defendants the Detroit/Downriver Chapter of the A. Philip Randolph Institute ("APRI"), the Michigan Alliance for Retired Americans ("MiARA"), and Rise, Inc. ("Rise" and, together with APRI and MiARA, "Proposed Intervenors") move to intervene as defendants in this lawsuit. The Court should grant Proposed Intervenors' motion, which meets all of the requirements for both intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b).

As to the former, Proposed Intervenors' motion is timely—filed during the early stages of this action, prior to discovery or any determination on the Secretary's pending motion to dismiss—and risks no prejudice to the existing parties. Proposed Intervenors are organizations whose missions include, among other things, encouraging and supporting their members' and constituents' participation in the electoral process. Proposed Intervenors have significant protectable interests implicated by this action: should Plaintiff, the Public Interest Legal Foundation ("PILF"), succeed, it would increase the risk that Proposed Intervenors' members or constituents may be improperly purged from Michigan's voter rolls due to error-prone or highly questionable database matching efforts. Should the Court grant PILF's requested relief, Proposed Intervenors will be required to divert resources to

1

minimize the risk that their members and constituents will be disenfranchised while the relief is implemented, and to assist any wrongfully purged voters to re-register.

For similar reasons, Proposed Intervenors' interests would be impaired if they cannot participate in this litigation. These interests, moreover, are not adequately represented in this lawsuit because, unlike the existing litigants, Proposed Intervenors would be the sole parties primarily focused on one of the key purposes of the National Voter Registration Act ("NVRA" or the "Act"): easing barriers to registration and voting.

Proposed Intervenors also meet the requirements for permissive intervention—the motion is timely, there is no risk that their participation will prejudice the parties or delay the litigation, and they raise common questions of law and fact.

Accordingly, this Court should grant the motion to intervene. Pursuant to Rule 24(c), a proposed answer is attached as Exhibit 1.

## II.      BACKGROUND

The Public Interest Legal Foundation ("PILF") filed this action on November 3, 2021, asserting two claims under Section 8 of the National Voter Registration Act: (1) failure to conduct list maintenance, Compl. ¶¶ 62–67, ECF No. 1, and (2) failure to allow inspection of records and data, *id*. ¶¶ 68–73. As a remedy, PILF asks, among other things, that the Court order the Michigan Secretary of State to (1) "immediately

and thoroughly investigate the deceased registrations identified by the Foundation and remove confirmed deceased registrants from the QVF"; (2) alter the way in which the Secretary maintains the voter rolls; and (3) cross-reference the names of *new registrants* against the SSDI. *Id*. at 19.

Little has transpired in this matter since PILF filed its Complaint. On November 29, 2021, the parties filed a proposed stipulation and order to extend deadlines. ECF No. 7. The Court adopted the proposed stipulation and order the next day. ECF No. 8. On December 13, 2021, Defendant filed a partial motion to dismiss, ECF No. 10, and an answer, ECF No. 14. On January 18, 2021, Plaintiff filed a brief in opposition to the motion to dismiss. ECF No. 16.

Proposed Intervenors APRI, MiARA, and Rise move to intervene to ensure that their members and constituents who are registered to vote remain so, and to ensure that their members and constituents not already registered retain the opportunity to do so without a heightened risk of removal. APRI is a local chapter of the A. Philip Randolph Institute, a national senior constituency group of the AFL-CIO for people of color and community activists established in 1965 to forge an alliance between the civil rights and labor movements. Its mission is to fight for human equality and economic justice and to seek structural changes through the American democratic process. To advance its mission, APRI works to encourage and assist qualified Michiganders, and particularly its members, to register to vote,

educate voters about their voting options, and encourage voters to cast their ballots through in-person or absentee voting. The bulk of APRI's work is focused on voter education, registration, and outreach efforts, particularly in underserved communities and geographies where a high number of unregistered individuals reside.

MiARA is a chartered state affiliate of the Alliance for Retired Americans. MiARA has over 200,000 members in Michigan, composed of retirees from 23 public and private sector unions, community organizations, and individual activists. Some of its members are disabled; many are elderly. MiARA is dedicated to ensuring that all seniors and retirees can live a life of dignity and with retirement security. It runs community and individual programs seeking to engage those who are members of a union, and those who are not, and to advocate for the protection and expansion of Social Security, Medicare, Medicaid, and pensions. To ensure that its members have their voices heard in Michigan elections, MiARA engages in get-out-the-vote efforts, such as making telephone calls to members and knocking on doors to encourage members to vote.

Rise is a student-led 501(c)(4) nonprofit organization that runs statewide advocacy and voter mobilization programs in Michigan, among other states. To advance its mission of fighting for free public higher education and ending homelessness, housing insecurity, and food insecurity among college students, Rise

is committed to empowering and mobilizing students in the political process and has focused a significant portion of its efforts on students in Michigan. For example, in 2019 it hired eleven student organizers in the state to engage college students in grassroots voter education, registration, and turnout activities, such as on-campus get-out-the-vote drives and canvasses. Similarly, during the 2020 election, Rise awarded a grant to assist in educating students at Michigan State University about their ability to vote by mail. Through these and other programs, Rise helped thousands of college students and young voters make plans to vote in the 2020 election. Rise intends to engage in similar activities in the future.

## III.   STANDARD OF LAW

The requirements for intervention under Rule 24 "should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991)).

To intervene as of right under Rule 24(a), the intervenor must show that "1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999)).

5

"Permissive intervention has a less exacting standard than mandatory intervention and courts are given greater discretion to decide motions for permissive intervention." *Priorities USA v. Benson*, 448 F. Supp. 3d 755, 759–60 (E.D. Mich. 2020) (citing *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)). "On a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The interest of the intervenors, for the purposes of permissive intervention, only needs to be "distinct" from the defendants, regardless of whether it is "substantial." *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 800 (E.D. Mich. 2020) (quoting *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018)).

## IV.   ARGUMENT

Through this action, PILF seeks to weaponize the NVRA to improperly force the purge of Michigan's voter rolls and to impose new hurdles on those who seek to register to vote by requiring that all new registrants be "cross-reference[d] . . . against the SSDI." Compl. at 20. PILF sued the Michigan Secretary of State, who is charged with effectuating the Act's twin goals—maintaining the integrity of the State's electoral rolls and easing barriers to registration and voting—but this case is missing

important perspectives: those of voters who are at risk of being improperly removed from the voting rolls and the organizations that represent them. Proposed Intervenors file the instant motion to advance these perspectives; if their motion is denied, the litigation will proceed without any litigant focused *specifically* on easing barriers to registration and voting, one of the key purposes for which the NVRA was enacted.

## A.    Proposed Intervenors are entitled to intervene as of right.

### 1.    The motion to intervene is timely.

This motion—filed well in advance of the Court's scheduling conference— satisfies the first element of intervention under Rule 24(a). Courts consider the following factors when deciding whether a motion to intervene is timely:

> (1) the point to which the suit has progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case; (4) the prejudice to the original parties due to the proposed intervenors' failure to promptly intervene after they knew or reasonably should have known of their interest in the case; and (5) the existence of unusual circumstances militating against or in favor of intervention.

*Stupak-Thrall*, 226 F.3d at 472–73 (quoting *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990)). "No one factor is dispositive, but rather the 'determination of whether a motion to intervene is timely should be evaluated in the context of all relevant circumstances.'" *Blount-Hill*, 636 F.3d at 284 (quoting *Stupak-Thrall*, 226 F.3d at 472–73).

Proposed Intervenors' motion is timely as this suit is in its infancy. First, the Court has yet to rule on any dispositive motion. *See Martin v. Corr. Corp. of Am.*, 231 F.R.D. 532, 536 (W.D. Tenn. 2005) (finding motion to intervene timely where intervenor "filed his motion to intervene . . . after Defendants filed motions to dismiss and before Plaintiffs' response to the motions to dismiss was due"); *cf. Blount-Hill*, 636 F.3d at 285 (observing "extensive progress ha[d] been made in [the] litigation" after entry of "decision granting in part Defendants' motion to dismiss" and "filing of a second motion to dismiss, to which Plaintiffs responded"). Second, discovery has not even begun. *See Pride v. Allstate Ins. Co.*, No. 10-13988, 2011 WL 692299, at *3 (E.D. Mich. Feb. 18, 2011) (finding motion to intervene timely where case had had not made major progression and discovery was ongoing). And third, it has been just over two months since the commencement of the action. *See Burrell v. State Farm Mut. Auto. Ins. Co.*, No. CV 16-10508, 2016 WL 9414103, at *1 (E.D. Mich. June 10, 2016) ("The motion is timely, as it was filed less than three months after the suit was removed to federal court.").

Proposed Intervenors seek to participate in this lawsuit "(1) to assure that no overzealous measures going beyond the reasonable list maintenance program required by the statute are employed, which could increase the risk of properly registered voters being removed by mistake, and (2) to avoid the need to expend [their] resources . . . identifying and aiding incorrectly removed legitimate voters in

unnecessary efforts to have their registrations restored, in case they are purged by mistake." *Winfrey*, 463 F. Supp. 3d at 798. In other words, they seek to protect against irreparable harm to themselves and to safeguard their members' fundamental rights. *See Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("It is beyond cavil that voting is of the most fundamental significance in our constitutional structure."). These are unquestionably "legitimate" purposes for intervention, and Proposed Intervenors' motion is timely in light of these stated purposes. *See Kirsch v. Dean*, 733 F. App'x 268, 275 (6th Cir. 2018) (quoting *Linton ex rel. Arnold v. Comm'r of Health & Env't*, 973 F.2d 1311, 1318 (6th Cir. 1992)).

Finally, Proposed Intervenors are prepared to follow any briefing schedule the Court sets and participate in any future hearings or oral arguments. Thus, their intervention will cause no delay.

### 2. Proposed Intervenors have significant protectable interests in this litigation, and their interests may be impaired absent intervention.

Proposed Intervenors have significant cognizable interests at issue in this litigation. Indeed, the Sixth Circuit has described this requirement as "rather expansive," *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997), and one that courts should "construe[] liberally." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). An intervenor need not have the same standing necessary to initiate a lawsuit, and the Sixth Circuit has rejected the notion that Rule 24(a)(2) requires a "specific legal or equitable interest." *Mich. State AFL-CIO*, 103 F.3d at

1245. Furthermore, the burden of establishing impairment of a protectable interest is "minimal," *id.* at 1247; an intervenor need only demonstrate that impairment is *possible. See Purnell*, 925 F.2d at 948. And the Sixth Circuit "has recognized that the time-sensitive nature of a case may be a factor in [the] intervention analysis." *Mich. State AFL-CIO*, 103 F.3d at 1247 (finding impairment of interest when the proposed intervenor "may lose the opportunity to ensure that one or more electoral campaigns in Michigan are conducted under legislatively approved terms that [the proposed intervenor] believes to be fair and constitutional.").

Here, Proposed Intervenors have two legally cognizable interests that may be impaired by this lawsuit. First, Proposed Intervenors seek to ensure both that their members and constituents who are already registered to vote are not needlessly purged from the voter rolls and that their voter registration efforts are not undermined by PILF's requests that the state impose new requirements on voter registrants in Michigan, "immediately and thoroughly investigate" select registrants identified by PILF, (Compl. at 19), and engage in "overzealous measures" that go "beyond the reasonable list maintenance program required by the statute." *Winfrey*, 463 F. Supp. 3d at 798. These measures "could increase the risk of properly registered voters being removed by mistake." *Id*.[1] As the Eleventh Circuit has

---

[1] *Winfrey* concerned permissive intervention rather than intervention of right. However, the stark parallels between *Winfrey* and the instant matter—including the

recognized, "a maximum effort at purging voter lists could minimize the number of ineligible voters, but those same efforts might also remove eligible voters." *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019).

Those eligible voters are likely to include members of Proposed Intervenors' organizations or individuals who Proposed Intervenors serve. Students and minority voters are among the individuals most likely to be erroneously removed from voter rolls[2]—precisely the individuals Rise and APRI make efforts to register and who comprise Proposed Intervenors' membership and constituents. Indeed, young voters, including students, are Rise's central constituency. Similarly, a substantial portion of APRI's constituency is comprised of minority voters: it serves the Detroit/Downriver community, which is disproportionately Black and Hispanic, and specifically targets voters who speak Spanish or Arabic as their first language.

Proposed Intervenors also seek to avoid having to expend additional resources "identifying and aiding incorrectly removed legitimate voters in unnecessary efforts to have their registrations restored, in case they are purged by mistake." *Winfrey*, 463 F. Supp. 3d at 798. If PILF prevails, Proposed Intervenors will need to divert

---

claims at issue and the presence of PILF as a plaintiff in both—make *Winfrey*'s analysis particularly weighty here. *See infra* Part IV.B.

[2] Kevin Morris, et al., *Purges: A Growing Threat to the Right to Vote*, Brennan Center for Justice (July 20, 2018) at 7, https://www.brennancenter.org/our-work/research-reports/purges-growing-threat-right-vote.

their resources to monitor the implementation of PILF's requested relief to minimize the risk that their members and constituents will be erroneously removed from the voter rolls and thereby disenfranchised. APRI and MiARA would need to reach out to their members to determine whether they remain registered to vote and, if they have been purged, assist them in re-registering. Similarly, Rise would need to allocate resources to ensure that its constituents, including potentially the young voters it has previously helped register, have not been incorrectly purged from the voter rolls. These efforts would necessarily divert resources from Proposed Intervenors' other activities (such as their robust public policy and issue advocacy work), thus imposing cognizable harm on the organizations and their members and constituents. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

Proposed Intervenors thus have significant protectable interests that are implicated by this lawsuit and easily satisfy the "minimal" burden of showing that disposition of this matter may impair their ability to protect those interests. *Mich. State AFL-CIO*, 103 F.3d at 1247. Indeed, impairment of Proposed Intervenors' interests in this suit is not just "possible"—which is all that Proposed Intervenors must show to establish this prong—but highly likely. *Id.* (citing *Purnell*, 925 F.2d at 948). These factors strongly favor granting intervention as of right.

**3.      Proposed Intervenors' interests are not adequately represented by the current parties.**

Finally, Proposed Intervenors' interests are not adequately represented by PILF or the Defendant. "Although a would-be intervenor is said to shoulder the burden with respect to establishing that its interest is not adequately protected by the existing parties to the action, this burden 'is minimal because it is sufficient that the movant[] prove that representation *may* be inadequate.'" *Id.* (alteration in original) (emphasis added) (quoting *Linton*, 973 F.2d at 1319). "The question of adequate representation does not arise unless the applicant is somehow represented in the action. An interest that is not represented at all is surely not 'adequately represented,' and intervention in that case must be allowed." *Grubbs*, 870 F.2d at 347. Where one of the original parties to the suit is a government entity whose "views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it," courts have found that "the burden [of establishing inadequacy of representation] is comparatively light." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (citing *Conservation Law Found. of New Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992)); *Mausolf v. Babbitt*, 85 F.3d 1295, 1303 (8th Cir. 1996).

As a threshold matter, the presumption of adequate representation that arises when "the proposed intervenor and a party to the suit . . . have the same ultimate objective," *Bradley*, 828 F.2d at 1992 (internal quotation omitted), does not apply

here because Proposed Intervenors do not share the interests of any party. Proposed Intervenors are not represented by PILF, which hopes to purge the state's voter rolls and impose new burdens on voter registration. *See* Compl. at 19. Error-prone purges risk disenfranchising Proposed Intervenors' members and constituents, forcing Proposed Intervenors to divert resources to protect the rights of their members and the communities they serve. This risk is especially palpable here, as PILF has failed to back up its assertions that deceased voters remain on the rolls with any actual evidence.

While PILF is concerned entirely with purging voter rolls, Defendant is tasked with balancing the NVRA's two competing goals, i.e., "easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voter rolls." *Bellitto*, 935 F.3d at 1198. In contrast, Proposed Intervenors alone have "[t]he mission and interest . . . explicitly to pursue the second of the expressly recognized interests that motivated Congress to enact [the NVRA]," *Winfrey*, 463 F. Supp. 3d at 801, namely "easing barriers to registration and voting," *Bellitto*, 935 F.3d at 1198. Because this goal "naturally create[s] some tension" with the other goal of the NVRA, *id.*, Proposed Intervenors and Defendant may find themselves at odds throughout this case on issues ranging from the best basis on which to defend the law to how to appropriately craft a remedy should PILF prevail. Thus, even though both Proposed Intervenors and Defendant

"may seek the same outcome of this case," they may each present their "own unique arguments" against PILF's interpretation of the NVRA and relief sought. *Wilkins v. Daniels*, No. 2:12-CV-1010, 2012 WL 6015884, at *4 (S.D. Ohio Dec. 3, 2012); *see also Paher v. Cegavske*, No. 3:20-CV-00243-MMD-WGC, 2020 WL 2042365, at *3 (D. Nev. Apr. 28, 2020) (granting intervention as of right where proposed intervenors "may present arguments about the need to safeguard [the] right to vote that are distinct from [state defendants'] arguments"). As one court recently explained:

> While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures. As a result, the parties' interests are neither "identical" nor "the same."

*Issa v. Newsom*, No. 2:20-CV-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (citation omitted).

Because Proposed Intervenors' particular interests are not shared by the present parties, they cannot rely on Defendant or anyone else to provide adequate representation. They have thus satisfied the four requirements for intervention as of right under Rule 24(a)(2). *See id.* at *3–4; *Paher*, 2020 WL 2042365, at *3.

**B.      Alternatively, Proposed Intervenors should be granted permissive intervention.**

Even if Proposed Intervenors were not entitled to intervene as of right, permissive intervention is warranted under Rule 24(b). "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Permissive intervention has a less exacting standard than mandatory intervention and courts are given greater discretion to decide motions for permissive intervention." *Priorities USA*, 448 F. Supp. 3d at 759–60. Proposed intervenors need only show that their interest is "'distinct' from the defendants, regardless of whether it is 'substantial.'" *Winfrey*, 463 F. Supp. 3d at 800 (quoting *League of Women Voters*, 902 F.3d at 579).

Proposed Intervenors easily meet these requirements. First, their motion is timely, and intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Part IV.A.1 *supra*. Moreover, Proposed Intervenors' interests are distinct and not adequately represented by the existing defendants. *See* Part IV.A.3 *supra*. And Proposed Intervenors will undoubtedly raise common questions of law and fact in opposing PILF's suit.

Other courts have granted permissive intervention in cases almost exactly like this one. In *Winfrey*, PILF brought suit against the City of Detroit's Clerk and

16

Director of Elections alleging a violation of Section 8 of the NVRA and asserting allegations parallel to those alleged here. 463 F. Supp. 3d at 797. The League of Women Voters moved to intervene, which the court granted. The court explained that the League's "mission and interest" of preventing registered voters from being purged from the rolls represented one of the "expressly recognized interests that motivated Congress to enact reforms to the voter registration process in recent decades." *Id*. at 801. As a result, the League's presence in the suit "unquestionably w[ould] be helpful to the Court when it is called upon to strike the required balance and decide whether the defendants' program of list maintenance is 'reasonable' within the meaning of the statute." *Id*.

The same is true here. The legal issues presented are nearly identical to those in *Winfrey*. As there, PILF sues under Section 8 of the NVRA alleging that a jurisdiction has failed to maintain a "reasonable" list maintenance program under the statute and seeking, as a remedy, to purge the jurisdiction's voter rolls. Like the League, Proposed Intervenors have an interest in protecting legitimate registered voters from being purged from voter rolls. As discussed above, Proposed Intervenors' members and constituents are especially at risk of being improperly purged from the voter rolls under PILF's requested relief. Furthermore, Proposed Intervenors would be forced to divert their limited resources from their other

activities, including advocacy work and registering *new* voters, to address and mitigate the harm to their members and constituents if PILF prevails.

Accordingly, this Court should grant Proposed Intervenors permissive intervention to give voice to their interests and to protect the rights of the voters they represent.

## V.    CONCLUSION

For the foregoing reasons, Proposed Intervenors respectfully ask this Court to grant their motion to intervene.

Respectfully submitted, this 25th day of January, 2022.

/s/ *Uzoma N. Nkwonta*
Uzoma N. Nkwonta
Joshua L. Harris*
Noah B. Baron*
Joel J. Ramirez*
**ELIAS LAW GROUP LLP**
10 G Street NE
Suite 600
Washington, DC 20002
Telephone: (202) 968-4654
Facsimile: (202) 968-4498
unkwonta@elias.law
jharris@elias.law
nbaron@elias.law
jramirez@elias.law

Sarah S. Prescott
Salvatore Prescott & Porter, PLLC
105 E. Main Street
Northville, Michigan 48167
sprescott@spplawyers.com
Telephone: (248) 679-8711
Facsimile: (248) 773-7280
sprescott@spplawyers.com

*Counsel for Proposed Intervenors*
*\*Motions for Pro Hac Vice Forthcoming*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(b)(ii), counsel for Proposed Intervenors certify that this brief contains 4,115 words, as indicated by Microsoft Word 2021, inclusive of any headings, footnotes, citations and quotations, and exclusive of the caption, cover sheets, table of contents, table of authorities, signature block, any certificate, and any accompanying documents.

*/s/ Uzoma N. Nkwonta*
Uzoma N. Nkwonta