UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PUBLIC INTEREST LEGAL
FOUNDATION,

    Plaintiff,

v.

JOCELYN BENSON,

    Defendant.

_____

ELECTRONIC REGISTRATION
INFORMATION CENTER, INC.,

    Movant.

_____/

Case No. 1:21-cv-929

HON. JANE M. BECKERING

## MEMORANDUM OPINION AND ORDER

Now pending before the Court is an appeal filed by Plaintiff Public Interest Legal Foundation (PILF) (ECF No. 109) from a June 14, 2023 pretrial Order of the Magistrate Judge granting non-party Electronic Registration Information Center, Inc. (ERIC)'s Motion to Quash Subpoena and for a Protective Order (ECF No. 102). On July 12, 2023, ERIC filed a response in opposition to the appeal (ECF No. 112). For the following reasons, the Court denies the appeal.

### I. BACKGROUND

PILF initiated this case under the National Voter Registration Act (NVRA), 52 U.S.C. § 20507, against Defendant Jocelyn Benson in her official capacity as Michigan's Secretary of State (Compl. [ECF No. 1]). PILF seeks declaratory and injunctive relief for two alleged violations of the NVRA: "Failure to Conduct List Maintenance" (Count I) and "Failure to Allow Inspection

of Records and Data" (Count II). Specifically, PILF alleges that "Michigan's list maintenance activities have proven unreasonably inadequate to identify many registrants who are deceased" (*id.* ¶ 25).

ERIC is a non-profit, non-partisan membership organization that uses proprietary software settings to provide its member jurisdictions, including Michigan, with various maintenance reports at their request, including a "Deceased Report" that lists the names of registered voters who appear to have died.  *See* Hamlin Decl. [ECF No. 82 at PageID.882–885] ¶¶ 9, 11, 27–30, & 45–53). ERIC is certified by the National Technical Information Service (NTIS), a federal agency, to obtain and use Limited Access Death Master File (LADMF) data maintained by the federal government (*id.* ¶¶ 32 & 59).

PILF does not dispute that Michigan has produced all ERIC "Deceased Reports" in its possession, except for those reports created within the last three years, which Michigan asserts are protected from disclosure under federal law (Hrg. Tr., ECF No. 108 at PageID.1962).  *See* Def. Resp. to Pl. Request to Produce No. 8, ECF No. 83-2 at PageID.1804, citing 42 U.S.C. § 1306c (Restriction on Access to the Death Master File) (prohibiting disclosure of Death Master File information for an individual during the three-calendar-year period following the individual's death, unless the person requesting the information has been certified).

***The First Subpoena.***  On March 3, 2023, PILF served a subpoena on ERIC, which is not a party to this case, requesting a deposition of the organization pursuant to Federal Rule of Civil Procedure 30(b)(6) on the following two topics: "[1] the records given to and contract and communications with the State of Michigan, the Michigan Secretary of State, or a representative of the Michigan Secretary of State's Office regarding identifying deceased registrants on Michigan's voter rolls and [2] ERIC's processes for identifying deceased registrants on Michigan's

voter rolls" (Ex. 19 to Wiygul Decl., ECF No. 83-2 at PageID.1830). The subpoena also requested production of the following four categories of documents:

1. All records given to the State of Michigan, the Michigan Secretary of State, or a representative of the Michigan Secretary of State's Office since January 1, 2018 that identify deceased registrants on Michigan's voter roll.

2. All communications with any representative of the State of Michigan or the Michigan Secretary of State's Office regarding deceased registrants on Michigan's voter roll.

3. All agreements or contracts between ERIC and any Michigan government agency or official regarding deceased registrants on Michigan's voter roll.

4. All records describing ERIC's processes or procedures for identifying deceased registrants.

*Id.* at PageID.1834.

***The Second Subpoena.*** After ERIC objected to the subpoena on various grounds, PILF issued a second subpoena on March 30, 2023, expanding the matters for examination with the corporate designee to include the following eleven topics:

1. ERIC's origins, funding, purpose, and capabilities.

2. ERIC's bylaws and membership agreement.

3. ERIC's past and present Board Members.

4. ERIC's Research Advisory Board.

5. ERIC's Privacy & Technology Advisory Board.

6. ERIC's processes for identifying ineligible registrants, including deceased registrants.

7. ERIC's vendors, contractors, and partners.

8. ERIC's relationship with the Center for Election Innovation and Research.

9. Records and information provided by ERIC to the State of Michigan, including records relating to deceased registrants.*

10. Records and information provided by the State of Michigan to ERIC, including records relating to deceased registrants.*

> 11. Other communications between ERIC and the State of Michigan not included in Topics 9 and 10.*
>
> *To be abundantly clear, these topics are not limited to or synonymous with the documents requested by this subpoena.

*Id.* at PageID.1860.  PILF also expanded the descriptions of its requested document production, as follows:

> 1. All records ~~given to the State of Michigan, the Michigan Secretary of State, or a representative of the Michigan Secretary of State's Office since January 1, 2018 that identify deceased~~ **relating to the identification and/or removal of** registrants **who may be deceased** on Michigan's voter roll.
>
> 2. All communications ~~with any representative of the State of Michigan or the Michigan Secretary of State's Office~~ regarding **the identification and/or removal of** ~~deceased~~ registrants **who may be deceased** on Michigan's voter roll.
>
> 3. All agreements or contracts between ERIC and any ~~Michigan government agency or official~~ **third party** regarding **the identification of** ~~deceased~~ registrants **who may be deceased** on Michigan's voter roll.
>
> 4. All records describing ERIC's processes or procedures for identifying ~~deceased~~ registrants **who may be deceased**.

*Id.* at PageID.1864.

ERIC has not produced any discovery (Hrg. Tr., ECF No. 108 at PageID.1963).  Instead, ERIC, a Delaware corporation, moved to quash the subpoena in the District of Delaware (ECF No. 80), and PILF filed a response in opposition (ECF No. 94).  The Delaware case was transferred to this Court on May 22, 2023 (ECF Nos. 87–88) and incorporated within this case docket.

On June 14, 2023, the Magistrate Judge conducted a hearing on ERIC's motion to quash.  At the start of the hearing, the Magistrate Judge shared her initial thoughts about the motion, which were as follows:

> [T]he central question in this case is whether Michigan's process for removing deceased registrants—or deceased voters from those rolls is a reasonable one, and in my view, in reviewing all of this, it has to depend in large part on whether—on what information is available to Michigan about whether or not what they are doing

> is reasonable. In reviewing the, for instance, the interrogatory responses that PILF attached to its response …, there's rather a lengthy process that Michigan uses to determine whether someone on its voter rolls has died, and the information from the ERIC program is only a small part of that[.] [W]hile PILF argues that it's entitled to determine whether ERIC's processes are flawed, that strikes me as not necessary and proportional to the case where PILF has alleged that there are 25,000 deceased individuals on Michigan's voter rolls, and if it can prove that, the question then is whether Michigan should have done more to identify those individuals, not whether any particular database is insufficient.

(Hrg. Tr., ECF No. 108 at PageID.1955). The Magistrate Judge also indicated that PILF appeared to be "fishing" inasmuch as "the information sought by PILF regarding ERIC's origin, funding, purposes, bylaws, membership agreement, board, research advisory board, privacy and technology board, vendors, contractors, partners … appears, at least for the purposes of this litigation, to be patently overbroad" and "far outside the core of this case" (*id.* at PageID.1956–1957). Consequently, the Magistrate Judge also indicated that even if some portion of the information sought was relevant, she was concerned about the burden to ERIC and again, whether the request was "proportional to the litigation" (*id.* at PageID.1957–1958).

PILF asserted that its discovery revealed that the records from ERIC are the "only records that the Bureau of Election directly compares against the qualified voter file" (ECF No. 108 at PageID.1958). PILF emphasized that Michigan "relies upon ERIC" (*id.* at PageID.1961). The Magistrate Judge responded that while she could "see PILF's point in trying to figure that [list maintenance program] out ab initio, [but] given that there is—it's a third party and there's some burdensome issues to be considered as well as proportionality, that strikes me as problematic without more of a showing as to why the ERIC data is the problematic part of the equation" (*id.* at PageID.1970).

Secretary Benson declined to take a position on ERIC's motion (*id.* at PageID.1953), but she opined that PILF was "overstating" ERIC's role in the list maintenance process (*id.* at

5

PageID.1976–1977). Secretary Benson indicated that "if we've missed it on the [Social Security Death Index], if we haven't gotten it through [the Department of Health and Human Services death] records, [and] the local clerks haven't found it, then there would be a [sic] some small subset of individuals for whom we might catch their names through the ERIC process" (*id.* at PageID.1977). Secretary Benson indicated that she would not characterize ERIC's role as either "central" or "reliant" but as "cleanup" (*id.* at PageID.1976–1977). Last, Secretary Benson opined that PILF's relevance theory would not "stop at ERIC [but] would encompass any other source of information" that Michigan uses (*id.* at PageID.1966–1967).

The Magistrate Judge reiterated her initial decision to grant the motion to quash. She determined that "at this point the record, as it's been developed, really only makes relevant in this case the information that Michigan has, including the reports that it's received from ERIC" (*id.* at PageID.1978). The Magistrate Judge found that the "potential for some small percentage of folks who are not in the [Customer and Automotive Records System (CARS)] database and only in the [Qualified Voter File (QVF)] database" was "unclear" and did not reveal a "sufficient issue with Michigan's process, based only on that or on any other issue with the information that ERIC is providing, such that it would be proportional to the litigation to require that of ERIC at this point" (*id.* at PageID.1979). Indeed, the Magistrate Judge indicated that based on the breadth of the subpoena, she was concerned that the subpoena was "potentially an abuse of the process before this Court" (*id.* at PageID.1979–1980). An Order was issued that same day, granting ERIC's motion to quash "[f]or the reasons stated on the record" (ECF No. 102). This appeal followed.

## II. MOTION STANDARD

"[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court," with certain exceptions. 28 U.S.C. § 636(b)(1)(A). "When a pretrial

matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." FED. R. CIV. P. 72(a) (Nondispositive Matters). "A party may serve and file objections to the order within 14 days after being served with a copy." *Id. See also* W.D. Mich. LCivR 72.3(a) (Appeal of nondispositive matters).

This Court will reverse an order of a magistrate judge only where it is shown that the decision is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* FED. R. CIV. P. 72(a); W.D. Mich. LCivR 72.3(a). A factual finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). "An order is 'contrary to the law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citation omitted).

### III.  ANALYSIS

In support of its appeal, PILF argues that the Magistrate Judge applied the incorrect standard to determine whether its requested discovery is relevant (ECF No. 110 at PageID.1988–1990). Specifically, PILF asserts that the Magistrate Judge erroneously required PILF to first demonstrate defects in the very information that PILF is seeking to discover, i.e., information that PILF does not yet possess (ECF No. 110 at PageID.1985, 1989). According to PILF, the Magistrate Judge's error "puts the cart before the horse, especially when the horse is a central issue in this case (whether list maintenance processes are adequate under the NVRA)" (*id.* at PageID.1989). PILF argues that the Magistrate Judge therefore also erred in finding that the

7

discovery request was disproportionate to the needs of the case and that compliance with the subpoena would be unduly burdensome to ERIC (*id.* at PageID.1985, 1991–1993).

In response, ERIC argues that PILF misapprehends the applicable standard of review and fails to identify any basis for disturbing the Magistrate Judge's carefully considered discovery ruling (ECF No. 112 at PageID.2001).  ERIC asserts that the Magistrate Judge properly quashed the subpoena as the subpoena seeks discovery that is irrelevant, disproportionate to the needs of the underlying case, and unduly burdensome to a non-party (*id.* at PageID.2006–2011).  ERIC opines that PILF's appeal "does little more than double down on its earlier misstatements" (*id.* at PageID.2012–2013).

PILF's appeal is properly denied.

Federal Rule of Civil Procedure 26 governs the general scope of discovery.  Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  FED. R. CIV. P. 26(b)(1).

Federal Rule of Civil Procedure 45, in turn, permits a party to subpoena a non-party to produce discovery related to pending litigation.  *See* FED. R. CIV. P. 45(a)(1)(D).  Rule 45(d)(3) limits a party's subpoena power and provides that on timely motion, a court "may" quash a subpoena that requires either "disclosing a trade secret or other confidential research, development, or commercial information" or "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not

requested by a party." FED. R. CIV. P. (d)(3)(B)(*i*) & (*ii*). Furthermore, a court "must" quash a subpoena that either "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or "subjects a person to undue burden." FED. R. CIV. P. 45(d)(3)(A)(*iii*)–(*iv*). "Undue burden is to be assessed in a case-specific manner considering 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (citation omitted). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *Id.* (citation omitted).

There is no merit to PILF's argument that the Magistrate Judge applied the wrong legal standard in deciding ERIC's motion to quash. The Magistrate Judge's ruling was properly based on her determination that the requested discovery was neither "necessary" nor "proportional." Rule 26 expressly instructs the court to determine whether a party's requested discovery is "proportional to the needs of the case, considering … the importance of the discovery in resolving the issues." The Sixth Circuit has instructed that it is not only the power but also the "*duty*" of courts to limit otherwise allowable discovery that exceeds its proportional bounds. *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 274 (6th Cir. 2021) (citation omitted, emphasis in original).

Moreover, there is no merit to PILF's argument that the Magistrate Judge erred in her proportionality assessment. The Magistrate Judge accurately identified the issue in this case as whether Secretary Benson conducts a program that makes "a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of—(A) the death of the registrant." *See generally* 52 U.S.C. § 20507(a)(4)(A). The Magistrate Judge found that the

requested discovery was not necessary to resolving that issue where PILF possesses the reports that Michigan received from ERIC, absent those that are protected from disclosure by federal law, and the record did not reveal any other particularized issue necessitating possession of the additional discovery. PILF reiterates its stance that the discovery is "relevant in the extreme," and PILF supplies excerpts from certain depositions to support its stance. However, the references to which PILF directs this Court merely reinforce that ERIC's reports are part of Michigan's process, which is not inconsistent with the Magistrate Judge's decision. Even assuming the likely benefit of the discovery to PILF, the Magistrate Judge also properly found that the "patently overbroad" subpoena and the burden therefore imposed on ERIC, a non-party to this litigation, to satisfy the subpoena weighed against PILF's need for the discovery.

In sum, PILF has not demonstrated that the Magistrate Judge's order quashing the subpoena was either clearly erroneous or contrary to law. Accordingly:

**IT IS HEREBY ORDERED** that Plaintiff's appeal (ECF No. 109) is DENIED.

Dated: October 30, 2023            /s/ Jane M. Beckering
                                   JANE M. BECKERING
                                   United States District Judge